# UNITED STATES DISTRICT COURT
## DISTRICT OF HAWAIʻI

CHARLES H. FOSTER,

          Petitioner,

    vs.

UNITED STATES OF AMERICA,

          Respondent.

CR. NO. 13-00219 DKW
CV. NO. 18-00420 DKW-RT

**ORDER (1) DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE; AND (2) DENYING CERTIFICATE OF APPEALABILITY**

On February 19, 2015, a jury found Petitioner Charles H. Foster guilty of drug and conspiracy offenses. Foster appealed, challenging certain evidentiary rulings and a colloquy between the Court and a witness at trial. The Ninth Circuit Court of Appeals affirmed in all respects. Nearly two years after the Ninth Circuit's affirmance, Foster now moves for habeas relief, making numerous arguments as to why his judgment of conviction and sentence should be vacated. For the reasons discussed below, to the extent Foster's arguments are not time-barred, the Court rejects the same because Foster has failed to show an entitlement to relief.

## BACKGROUND

## I.    Superseding Indictment, Jury Trial, and Sentencing

On May 22, 2014, a grand jury returned a Superseding Indictment in this case.  Dkt. No. 99.  Therein, Foster was charged with (1) possessing with intent to distribute 50 grams or more of methamphetamine (Count One), (2) possessing with intent to distribute a mixture or substance containing cocaine (Count Two), (3) using and carrying a firearm in furtherance of, and during and in relation to, a drug trafficking crime (Count Three), and (4) conspiring to possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine (Count Four).

After a five-day trial, a jury found Foster guilty of Counts One, Two, and Four, and not guilty of Count Three.  Dkt. No. 192.  Prior to the close of evidence, Foster chose not to exercise his right to testify in his own defense, prompting the Court to conduct a colloquy with him.  During the colloquy, Foster stated that he understood his testimonial rights, had spoken to counsel about those rights, and chose not to testify.  2/19/15 Transcript of Jury Trial at 101:11-102:8, Dkt. No. 230.

Prior to sentencing, the U.S. Probation Office prepared a Presentence Investigation Report (PSR).  Therein, the Probation Officer recommended applying a four-level increase to Foster's base offense level for being an organizer or leader

of a criminal activity involving five or more participants or that was otherwise extensive, pursuant to Section 3B1.1(a) of the U.S. Sentencing Guidelines. At sentencing, the Court adopted the recommendation, resulting in a total offense level of 40 and a guideline imprisonment range of 292 to 365 months imprisonment. On July 21, 2015, the Court sentenced Foster to 304 months' imprisonment on each of Counts One and Four, and 240 months' imprisonment on Count Two, all terms to run concurrently.

## II.    Appeal

Shortly thereafter, Foster appealed. On November 3, 2016, the Ninth Circuit affirmed Foster's convictions. In doing so, the Ninth Circuit rejected Foster's contention that admission of evidence relating to a prior drug conviction and two drug transactions in which he was involved constituted an abuse of discretion. The Ninth Circuit also rejected Foster's argument that the testimony of the government's expert chemist, Amanda Pontius, lacked foundation. Finally, the Ninth Circuit concluded that this Court did not commit plain error in participating in a colloquy with a witness. The mandate from the Ninth Circuit issued on November 28, 2016.

## III.    Section 2255 Proceeding

Nothing further took place in Foster's criminal case until the docketing of the instant motion to vacate, set aside, or correct his sentence ("the Section 2255

Motion") in October 2018.[1]  Liberally construing the Section 2255 Motion, Foster

makes the following arguments for vacating his conviction and sentence: (1) he

received ineffective assistance of counsel at sentencing when counsel failed to

properly object to the application of Section 3B1.1(a); (2) he received ineffective

assistance of counsel at trial when counsel failed to timely object to the testimony

of the government's expert chemist; (3) an attorney who represented him prior to

trial had a conflict of interest during such representation because the attorney,

Myles Breiner, also represented another individual, John Penitani, who was later a

witness at Foster's trial; (4) his due process rights were violated and he received

ineffective assistance of counsel when Breiner continued to represent Penitani

without obtaining Foster's consent; (5) his due process rights were violated when

his trial occurred and he was sentenced while he suffered from mental illness and

was incompetent, and he received ineffective assistance of counsel when counsel

withheld his prior history of mental illness; (6) he received ineffective assistance of

trial and appellate counsel when counsel failed to argue that the Court did not give

---

[1]Foster states that he signed the Section 2255 Motion on October 17, 2018, Dkt. No. 274 at 38, even though it was not docketed until October 29, 2018.  The mailing envelope, meanwhile, indicates that the Section 2255 Motion was mailed on October 19, 2018.  Dkt. No. 274-7. Because a declaration has not been filed stating when the Section 2255 Motion was placed in the prison mailing system, though, it is not clear when the Section 2255 Motion was so placed.  *See* Rules Governing Section 2255 Proceedings, R. 3(d) (providing that timely filing of a paper by an inmate may be shown by a declaration stating when the paper was deposited in the prison's internal mailing system).  Nonetheless, at this juncture, the Court will assume the Section 2255 Motion was filed on October 17, 2018.

him a meaningful opportunity to challenge the quantity of drugs for which he was held responsible; (7) he is not guilty of the conspiracy charged in Count Four in light of a letter he says he recently received from a government witness, Penitani, and he received ineffective assistance of trial counsel when counsel failed to make a proper motion for judgment of acquittal with respect to Count Four; and (8) he received ineffective assistance of trial counsel when counsel failed to challenge the admission into evidence of certain drugs.

In the Section 2255 Motion, Foster acknowledges that his arguments are untimely, conceding that the Section 2255 Motion is approximately eight months late. Foster argues, however, that the time limitation for filing his Section 2255 Motion should be equitably tolled because he is "unable rationally to personally understand the need to timely file" due to alleged mental health illnesses. Dkt. No. 274 at 36-37.[2]

The government has filed a response to the Section 2255 Motion, Dkt. No. 283, and Foster has filed a reply, Dkt. No. 284.

_____

[2]In citing to the Section 2255 Motion, the Court cites to the page numbers assigned to the motion by CM/ECF at the top of each page. This is because the numbering of the Section 2255 Motion itself is inconsistent, beginning, on the first page, with "Page 2" and also placing "Page 4" before "Page 3." *See* Dkt. No. 274 at 1-3.

## STANDARD OF REVIEW

Under Section 2255 of Title 28 of the United States Code (Section 2255),

"[a] prisoner in custody under sentence of a court established by Act of Congress .

. . may move the court which imposed the sentence to vacate, set aside, or correct

the sentence." 28 U.S.C. § 2255(a). The statute authorizes the sentencing court to

grant relief if it concludes "that the sentence was imposed in violation of the

Constitution or laws of the United States, or that the court was without jurisdiction

to impose such sentence, or that the sentence was in excess of the maximum

authorized by law, or is otherwise subject to collateral attack[.]" *Id.*

## DISCUSSION

### I.    Timeliness

A preliminary issue in this case, as Foster acknowledges in the Section 2255

Motion and the government argues in its response, is whether Foster has timely

moved for the habeas relief he now seeks. In analyzing that matter, the Court first

sets forth applicable legal standards before turning to the relevant arguments.

Pursuant to Section 2255(f), a one-year limitation period applies to motions

filed under the section. The one-year period begins to run from, among other

things, "the date on which the judgment of conviction becomes final…."[3] When a

---

[3]It is also possible for the one-year period to run from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(4). Several of Foster's claims are prefaced by an assertion of "newly

defendant does not file a petition for certiorari with the Supreme Court, as Foster did not here, "a judgment of conviction becomes final when the time expires for filing a petition for certiorari contesting the appellate court's affirmance of the conviction." *Clay v. United States*, 537 U.S. 522, 525 (2003). Pursuant to Rule 13 of the Rules for the United States Supreme Court, a petition for certiorari must be filed within 90 days of the entry of the judgment sought to be reviewed, rather than from the issuance date of the mandate.

Here, the Ninth Circuit entered judgment affirming Foster's convictions on November 3, 2016. Dkt. No. 262. Ninety days from November 3, 2016 is February 1, 2017.[4] *See* Fed.R.Crim.P. 45(a)(1) (providing that, in calculating a period stated in days, the day of the triggering event is excluded, every day including Saturdays, Sundays, and legal holidays is counted, and the last day of the period should be included unless it is a Saturday, Sunday, or legal holiday). Foster, therefore, had until February 1, 2018 to file a timely habeas motion under

_____

discovered evidence" and may rely on Section 2255(f)(4). *See, e.g.*, Dkt. No. 274 at 13. Foster, however, does not explain when the purportedly new facts supporting these claims could have been discovered through the exercise of due diligence. *See id.* This may be because only one of Foster's claims is actually supported by anything approximating new evidence. In any event, in addressing the timeliness of the Section 2255 Motion herein, the Court focuses on the date on which the judgment of conviction became final. To the extent any claim may (or may not) be supported by new evidence, the Court further addresses those claims later in this Order.
[4]Foster asserts that the one-year period began on February 3, 2017. Dkt. No. 274 at 36. Although it makes little difference to the overall timeliness (or lack thereof) of the Section 2255 Motion, the Court disagrees.

Section 2255(f)(1).[5]  As discussed, the Section 2255 Motion was filed, at the earliest, on October 17, 2018.  Therefore, under Section 2255(f)(1), the Section 2255 Motion was filed more than eight months too late.

That is, absent some principle of tolling.  As discussed, here, Foster relies on the principle of equitable tolling to argue that all of his claims should be considered timely.  "A § 2255 movant is entitled to equitable tolling 'only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'"  *United States v. Buckles*, 647 F.3d 883, 889 (9th Cir. 2011) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)) (internal quotation omitted).

Here, the "extraordinary circumstance" upon which Foster relies is mental health illness from which he allegedly suffers.  The Ninth Circuit has "long recognized equitable tolling in the context of a petitioner's mental illness."  *Bills v. Clark*, 628 F.3d 1092, 1097 (9th Cir. 2010).  In order for a petitioner to be eligible for equitable tolling due to mental impairment, he must meet the following two-part test:

> (1)     First, a petitioner must show his mental impairment was an 'extraordinary circumstance' beyond his control by demonstrating the impairment was so severe that either

---

[5]Foster asserts that the one-year period expired on February 3, 2018, Dkt. No. 274 at 36, while the government asserts that the period expired on February 2, 2018, Dkt. No. 283 at 14.  Again, although it makes little difference to the overall timeliness (or lack thereof) of the Section 2255 Motion, the Court disagrees with both parties.

(a) petitioner was unable rationally or factually to personally understand the need to timely file, or

(b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.

(2)     Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Id*. at 1099-1100 (citations and notation omitted).

In the Section 2255 Motion, Foster dedicates his assertions to the first part of *Bills'* two-part test: whether his mental impairments were severe enough to constitute an extraordinary circumstance.[6]  Putting aside whether Foster "has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing," *see id*. at 1100,[7] at no

---

[6]To the extent Foster's reply can be construed as addressing the issue of equitable tolling, it too only focuses upon the first part of the *Bills* test.  *See* Dkt. No. 284 at 1-3.

[7]The Court is, at the very least, highly skeptical of the non-frivolity of Foster's assertions regarding the severity of his mental impairment.  A closer inspection of those assertions reflects that they are largely regurgitations of the Ninth Circuit's language in *Bills*.  *Compare* Dkt. No. 274 at 37 (asserting that Foster was "unable rationally to personally understand the need to timely file…"), *with Bills*, 628 F.3d at 1100 (explaining that a petitioner can demonstrate severity by showing, *inter alia*, that he was "unable rationally or factually to personally understand the need to timely file…").  Foster's assertions can also be characterized by their vagueness.  For example, Foster asserts that his mental impairment "imposes great hurdles" on everyday life and interferes with his ability to "make rational decisions regarding his case at the time…."  Dkt. No. 274 at 36.  Foster, though, fails to identify any of the "great hurdles" imposed, things of everyday life impacted, or decisions regarding his case affected by his mental impairments.  The Court acknowledges, however, that Ninth Circuit precedent may, arguably, suggest that Foster's vague assertions are sufficient to warrant further development as to the severity of his mental impairments.  *See Laws v. Lamarque*, 351 F.3d 919, 924 (9th Cir. 2003)

point in the Section 2255 Motion or in the reply does Foster even mention the second part of the *Bills* test: diligence in pursuing his claims.[8]  While this Court liberally construes the assertions Foster does make, with respect to *Bills'* second part, there are simply no assertions to construe, liberally or otherwise.

"With respect to the necessary diligence, the petitioner must diligently seek assistance and exploit whatever assistance is reasonably available." *Id*. at 1101. This may include inmates who assist prisoners with legal filings, if any. *Id*.  In the Section 2255 Motion, Foster asserts that he, "with legal aide from an elderly prisoner," is alleging that his mental illness has impaired his ability to file a timely habeas motion. Dkt. No. 274 at 37-38.  Notably, in this regard however, Foster fails to assert basic information related to the diligence inquiry, such as when he first attempted to seek assistance from a fellow prisoner.  As mentioned, the Section 2255 Motion was filed more than 20 months after the one-year limitations period began.  At no point in the Section 2255 Motion, though, does Foster attempt to paint even a broad picture of his diligence during this time period.  Further, it is

---

(stating that the allegations of a verified complaint or petition may be treated as an affidavit and it is "enough" for a petitioner to allege "mental incompetency" in a verified pleading for a court to order expansion of the record).  In any event, even if Foster's assertions can be considered sufficient to justify further development of the record regarding the *first* part of *Bills*, the Court rests its ruling as to equitable tolling on the *second* part of *Bills*.

[8]The Court notes that Foster appears aware that there is, at least, more than one part of the *Bills* test, given that he not only cites *Bills*, but also asserts that his mental impairments "satisfy the first requirement for equitable tolling…." *See* Dkt. No. 274 at 37.  The second requirement is not mentioned, however.

not this Court's role to simply paint-in such a picture with brush strokes of its own imagination.

As a result, because Foster does not even assert, let alone make any form of showing, that he acted with diligence in pursuing his claims, the Court cannot find that he is eligible for equitable tolling under the two-part *Bills* test.

## II.    Foster's Substantive Claims

To complete the record, the Court will also address the substantive merit of Foster's eight claims in the event that any one of those claims may be considered timely brought.

Most, if not all, of Foster's claims involve an assertion that he received ineffective assistance from one or more of the counsel who represented him before trial, at trial, or on appeal. In that light, the Court first sets forth the applicable legal principles for a claim of ineffective assistance of counsel, and then addresses Foster's claims.

### A.    Relevant Legal Principles

To prevail on an ineffective assistance of counsel claim, a petitioner must establish two distinct elements. First, he must show that counsel's representation fell below an objective standard of reasonableness. *Strickland v. Washington,* 466 U.S. 668, 688 (1984). Second, he must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different." *Id*. at 694. In other words, a petitioner must show both that counsel's performance was deficient *and* that the deficiency was prejudicial. *Id*. at 692.

Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id*. at 690-691.

Conclusory allegations of ineffective assistance of counsel made with no factual or legal explanation fall well short of stating a cognizable claim for ineffective assistance of counsel. *See Blackledge v. Allison,* 431 U.S. 63, 74 (1977) ("[P]resentation of conclusory allegations unsupported by specifics is subject to summary dismissal.").

## B. The Claims

### 1. Claim One

In his first claim, Foster argues that he received ineffective assistance of counsel at sentencing when counsel failed to properly object to the application of Section 3B1.1(a).  Other than asserting that there is nothing credible in the record to support Section 3B1.1(a)'s application, Foster points to no specific error that his counsel purportedly made in not objecting to the application of the provision. Instead, Foster resorts to conclusory legal assertions that counsel's performance was "unreasonable under prevailing professional standards" and "there is a reasonable probability that[,] but for counsel's unprofessional errors, the result would have been different."  Parroting *Strickland's* requirements, however, is  not sufficient.  *See Blackledge*, 431 U.S. at 74.  In addition, the explanation for why Section 3B1.1(a) was applied to Foster was contained in the PSR, *see* PSR at ¶ 34 (Dkt. No. 218), which the Court adopted at sentencing, and Foster makes no challenge to any of the findings therein.[9]

_____

[9]In his reply, Foster appears to suggest that he lacked intent in committing his crimes, his conspiracy did not develop a "code of conduct," he did not "grant permission" to members of the conspiracy, and he performed no ongoing management skills.  *See* Dkt. No. 284 at 4.  The latter three assertions are entirely unsupported and still do not address the specific findings in the PSR. As for Foster's assertion about his intent, that goes to his guilt or lack thereof for the charged crimes, which is discussed later herein in addressing another one of his claims.  It does not concern the application of Section 3B1.1(a).

Although Foster styles his first claim as one involving the ineffective assistance of counsel, it could be more accurately designated a "new evidence" claim. This is because, other than failing to identify any deficiencies in counsel's conduct, Foster relies primarily on a fact that he says he "recently discovered…." The new fact that Foster asserts he has recently discovered is that another individual has been found to be a leader or organizer of the same conspiracy. Dkt. No. 274 at 6. Whether or not another individual has been found to be a leader or organizer, however, is entirely irrelevant to whether Foster can also be so found, as the Application Notes to Section 3B1.1 specifically state that "more than one person" can qualify as a leader or organizer. *See* U.S.S.G. § 3B1.1, App. Note 4.

Therefore, whether in the guise of ineffective assistance of counsel or newly discovered evidence, Foster's first claim is meritless.

### 2. <u>Claim Two</u>

In his second claim, Foster asserts that he received ineffective assistance of counsel at trial when counsel failed to timely object to the testimony of the government's drug chemical expert, Pontius. Foster asserts that counsel did not raise an issue regarding the "functionality or calibration of the FTIR or GCMS." Foster further asserts that a proper foundation was not properly made for the chemical analysis and weight of the drug evidence, citing to trial "Exhibit 11." Foster also asserts that counsel failed to "voir dire" Pontius.

As an initial matter, these arguments are, at best, merely an extension of Foster's argument on appeal that the same testimony lacked foundation. As the Ninth Circuit observed, Pontius testified that she knew the equipment was functioning properly and described the performance check procedure at her laboratory. Foster points to no issue that his counsel failed to raise that would upset this foundation made at trial. Next, although Foster asserts that counsel did not raise an issue regarding the functionality or calibration of certain equipment, Foster fails to identify the specific nature of any such issue. Similarly, although Foster contends counsel should have "voir dired" Pontius, Foster fails to identify any specific questions counsel should have asked or explain why those questions were necessary. Finally, even if the Court was willing to assume some error in counsel's performance in this regard, Foster points to no specific prejudice resulting from counsel's purported error. Instead, he merely makes the conclusory statement that there was a reasonable probability the result of his trial would have been different. *See* Dkt. No. 274 at 11. This is, again, insufficient.[10]

Therefore, Foster's second claim is meritless.

---

[10]Foster's reply adds nothing to the analysis of his second claim other than further conclusory statements. *See* Dkt. No. 284 at 5.

3. **Claim Three**

In his third claim, Foster asserts that Breiner, who represented him prior to trial, had a conflict of interest during such representation because Breiner also represented Penitani, who was later a witness at Foster's trial.[11] As both parties acknowledge, this claim involves a purported concurrent conflict of interest. When a defendant claims that his counsel was conflicted in representing multiple clients, he must demonstrate an actual conflict of interest that adversely affected his lawyer's performance. *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980).

Here, Foster has pointed to no adverse effect on Breiner's representation during the slightly more than two-month period during which Breiner represented both Foster and Penitani. Although Foster asserts that Penitani became a witness for the government, Foster ignores the fact that this took place after the joint representation came to an end in August 2013.[12] In addition, while Foster sets

---

[11]Presumably, in an attempt to satisfy the one-year limitations period, Foster asserts that this claim (as well as his fourth claim) is premised upon newly discovered evidence. In the Section 2255 Motion, Foster fails to identify the newly discovered evidence that allowed him to bring these claims. *See generally* Dkt. No. 274 at 13-16. In his reply, though, Foster identifies a decision on March 13, 2018 from another judge of this District, as newly discovered evidence. Dkt. No. 284 at 5-6. For present purposes, although the Court is highly skeptical that Foster did not learn of Breiner's joint representation of Penitani and Foster until March 2018, the Court will assume that Foster's third claim (and fourth claim) have been timely brought, irrespective of his failure to show that he is entitled to equitable tolling.

[12]In his reply, Foster asserts that Breiner's representation of him placed Breiner "in a position to coach Penitani" as to how to testify against Foster at trial. Dkt. No. 284 at 6. Foster, though, points to no testimony from Penitani at trial that was the result of Breiner's alleged coaching. In any event, even if the Court was willing to assume the truth of Foster's unsupported assertions in this regard, they would not help his third claim concerning Breiner's representation during a purported *concurrent* conflict of interest.

forth a chronology of certain events that took place before and during his representation by Breiner, he does not argue that any of those events were affected by Breiner's joint representation.

Therefore, Foster's third claim is meritless.

### 4. <u>Claim Four</u>

In his fourth claim, Foster asserts that his due process rights were violated and he received ineffective assistance of counsel when Breiner continued to represent Penitani without obtaining Foster's consent.[13]  As both parties acknowledge, this claim concerns a conflict involving former clients or a successive conflict.  "Successive representation is sufficient to establish a conflict…."  *Hovey v. Ayers*, 458 F.3d 892, 908 (9th Cir. 2006).  Generally, however, "'it is more difficult to show an actual conflict resulting from successive rather than simultaneous representation.'"  *Id.* (quoting *Mannhalt v. Reed*, 847 F.2d 576, 580 (9th Cir. 1988)).  "In successive representation, conflicts of interest arise if an attorney reveals privileged communications of the former client, or otherwise divides his loyalties so that he is incapable of diligently representing his client."  *United States v. Wheat*, 813 F.2d 1399, 1402 (9th Cir. 1987).

---

[13]Foster also asserts that, at some point, Breiner also went on to represent two other individuals.  Dkt. No. 274 at 16.  In neither the Section 2255 Motion nor his reply, though, does Foster provide an explanation as to how Breiner's alleged representation of these two individuals constitutes a conflict as to Foster or how any such conflict adversely affected him.  Therefore, the Court does not further address this issue.

Here, because the government does not challenge that Breiner represented Penitani after Foster and concedes that Breiner did not obtain a waiver of conflict related thereto, *see* Dkt. No. 283 at 33-34, the Court assumes that successive representation took place and a conflict existed in this regard. As Supreme Court and Ninth Circuit precedent provide, however, a conflict alone does not result in a constitutional violation. Instead, at the very least, there must be an *actual* conflict, which means an adverse effect on counsel's performance. *See Mickens v. Taylor*, 535 U.S. 162, 171 (2002); *Hovey*, 458 F.3d at 908.[14]

Here, applying this standard to the facts of this case is somewhat different to when a successive-representation claim is often presented because the conflicted counsel no longer represented Foster at trial. *See, e.g.*, *United States v. Shwayder*, 312 F.3d 1109, 1118 (9th Cir. 2002) (explaining that a showing of an adverse effect requires counsel to be "influenced in his basic strategic decisions" during trial). In fact, Breiner did not even appear during Foster's criminal trial, let alone make any strategic decisions for him. Nonetheless, the Court will assume, even under the circumstances here, that it is possible for some form of adverse effect to

---

[14]The Court notes that, in *Mickens*, the Supreme Court left open the question whether the *Sullivan* exception–excepting concurrent conflicts of interest from the ordinary prejudice requirement of *Strickland*–applied in the context of successive representation. *Mickens*, 535 U.S. at 176. Because the Ninth Circuit has held that *Strickland* prejudice is not required in the context of a successive-representation claim, *Lewis v. Mayle*, 391 F.3d 989, 997 (9th Cir. 2004), this Court assumes that the *Sullivan* exception applies to Foster's fourth claim. As mentioned, though, this still requires Foster to show an actual conflict that adversely affected representation. *Id*.

be shown.  That being said, in the Section 2255 Motion, Foster makes no real attempt to make this showing.  Instead, he merely asserts that Breiner suffered from a conflict of interest and Penitani testified against him.  *See* Dkt. No. 274 at 16-17.  In addition, as noted earlier, although, in his reply, Foster contends that Breiner "coached" Penitani's trial testimony, Foster points to no information that he provided Breiner that Penitani used in testifying or otherwise suggests that Penitani was coached by such information.[15]  As a result, the Court does not find an adverse effect from Breiner's alleged successive representation.

Therefore, Foster's fourth claim is meritless.

### 5.   Claim Five

In his fifth claim, Foster asserts that his due process rights were violated when his trial occurred and he was sentenced while he suffered from mental illness and was incompetent.  Under the same claim-heading, Foster also asserts that he received ineffective assistance of counsel when counsel, Andrew Park, withheld his prior history of mental illness.  Because these arguments pose different legal questions, the Court addresses them separately, turning to counsel's alleged ineffective assistance first.

---

[15]In his reply, Foster also asserts that Breiner "fraudulently" took $10,000 from him.  Dkt. No. 284 at 7-8.  Even if this assertion was accurate, it has no bearing on whether an adverse effect under *Sullivan* has been shown.

Foster asserts that he is a military veteran and suffers from post-traumatic stress disorder (PTSD) and "other mental [h]ealth illnesses[.]" Dkt. No. 274 at 19. He further asserts that counsel was made aware of these conditions, but withheld their existence from the Court. In the Section 2255 Motion, Foster's only other argument in this regard with respect to counsel is that counsel's performance was unreasonable under professional standards and there was a reasonable probability the result of his criminal case would have been different. *See id.* at 20. In his reply, Foster adds that counsel was aware that he had been hospitalized for mental health problems, but did not conduct any investigation into his competency. Dkt. No. 284 at 10.[16]

First, as presented in the Section 2255 Motion, this fifth claim is undoubtedly meritless. In essence, Foster merely makes conclusory and formulaic assertions that counsel's performance fell below a reasonable standard and the outcome of his case would have been different. The only non-generality that Foster makes is that he suffers from PTSD and counsel did not inform the Court of this fact. Even if the Court were willing to assume that counsel was aware of Foster's PTSD, Foster fails to explain why counsel needed to inform the Court of

---

[16]In his reply, Foster also asserts that it is "undisputed" that he suffers from chronic depression and paranoid schizophrenia disorder. Dkt. No. 284 at 9. Given that Foster first mentions depression and schizophrenia in his reply, it can hardly be said to be undisputed that he suffers from the same. In any event, the only condition that the record reflects Foster having been diagnosed with is PTSD. *See* PSR at ¶¶ 56-57, Dkt. No. 218.

this fact.  Foster does not assert that counsel was aware of anything that would suggest Foster's incompetence or even anything that would suggest an investigation of Foster's competence was necessary.  Moreover, for purposes of sentencing, the Court was aware of Foster's PTSD.  *See* PSR at ¶¶ 56-57, Dkt. No. 218.  In his reply, Foster adds that counsel was aware of his hospitalization for mental health problems.  However, again, even if the Court was willing to assume counsel's awareness of this alleged fact, Foster fails to explain why it should have caused counsel to investigate further.  Foster fails to assert when he was allegedly hospitalized or how his alleged hospitalization indicated that he was incompetent at the time of his trial.[17]

In contrast to Foster's generalized legal conclusions and unsupported and irrelevant factual assertions are the specific factual assertions from Park that Foster had no problem participating in his defense before or during trial.  Park asserts that he and Foster reviewed all discovery together, Foster commented upon audio recordings the government had provided, Foster "generate[d] ideas" on how to attack government witnesses, and Foster wrote Park notes during trial.  None of the

---

[17]The Court also notes that, contrary to Foster's assertion, it is not "clear" that he has been institutionalized in mental health facilities.  *See* Dkt. No. 284 at 9.  Instead, the record reflects that, after being diagnosed with PTSD, Foster's primary care doctor referred him to mental health counseling, which Foster reported attending twice monthly between September 2014 and December 2014.  PSR at ¶ 57.  Moreover, prior to his PTSD diagnosis, Foster sought mental health treatment through the Veteran's Administration and, after receiving a mental health assessment, Foster was told that he "did not have enough of a history of psychiatric symptoms to warrant a diagnosis."  *Id.*

arguments made by Foster in his Section 2255 Motion or his reply controvert the factually specific assertions from Park. As a result, in light of Foster's inadequate legal conclusions and bald factual assertions, as well as the specific factual statements made by Park, the Court finds that Park did not provide inadequate assistance in this regard. *See Strickland*, 466 U.S. at 690-691 (explaining that "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."); *see also United States v. Howard*, 381 F.3d 873, 879 (9th Cir. 2004) (explaining that "bald, conclusory or inherently incredible assertions" of incompetence do not require an evidentiary hearing).

In his fifth claim, Foster also asserts that his due process rights were violated when his trial occurred and he was sentenced while he suffered from mental illness and was incompetent. In the Section 2255 Motion, Foster's assertions in this regard are, again, characterized by generalized legal conclusions that he did not intelligently comprehend the trial and was unable to assist in his defense. These assertions remain divorced from any specific factual detail about, *inter alia*, the effect of Foster's alleged mental health conditions on his comprehension of or assistance at the trial or sentencing. In his reply, Foster adds that, during his trial, when a rifle was shown to the jury, he "ducked down under the Defense Table in fear…." Dkt. No. 284 at 10. Even if this were true, Foster provides no explanation

as to why this event suggested that he was unable to comprehend the trial or assist in his defense.

Further, the evidence in the record demonstrates that Foster was competent at trial and sentencing. At trial, when the moment came for Foster to choose whether to testify or not on his own behalf, Foster exercised his right not to do so. The Court, as a result, then conducted a colloquy with Foster. 2/19/15 Transcript at 101:11-102:9, Dkt. No. 230. During that colloquy, Foster testified that he understood his right to testify at trial and, if he chose not to testify, no inference of guilt could be drawn by the jury. *Id.* at 101:14-24. Foster further testified that he had discussed these rights with counsel, including his decision whether or not to testify. *Id.* at 101:24-102:3. Foster then chose not to testify. *Id.* at 102:8. At no point during the colloquy, or in the Section 2255 Motion, did Foster state that his alleged mental health conditions impacted his decision not to testify or his understanding of that right. Furthermore, the PSR states that Foster told the Probation Officer that he "currently feels stable" and focusing on himself helped keep his anxiety levels low. PSR at ¶ 58. More generally, the PSR reflects that Foster was more than able to provide the Probation Officer with information on such things as his alcohol consumption, education, and medical history, as well as access he allegedly gave his mother to his bank account. *See generally id.* at ¶¶ 48-70.

Put simply, the record reflects only one thing about Foster's present assertions of incompetence: that it is now convenient for him to make such a claim. This is why Foster makes no specific factual assertions and relies on generalized legal statements, and why the record reflects that he was more than competent to comprehend the nature of the relevant proceedings and assist in his defense. As a result, Foster is not entitled to an evidentiary hearing as to his fifth claim, *see Howard*, 381 F.3d at 879, and the Court finds that his rights were not violated when this case proceeded to trial and he was sentenced.

### 6.    Claim Six

In his sixth claim, Foster asserts that he received ineffective assistance of trial and appellate counsel when counsel failed to argue that the Court did not give him a meaningful opportunity to challenge the quantity of drugs for which he was held responsible. This claim, like all of Foster's claims, is presented solely with conclusory assertions and legal statements. At no point does Foster explain what it is his counsel allegedly did wrong in failing to challenge the quantity of drugs for which he was held responsible. For example, Foster asserts that counsel failed to raise an "obvious" issue with the drug quantity but fails to explain what that obvious issue was. *See* Dkt. No. 274 at 23. Foster also asserts that he should only be held responsible for drugs he could reasonably foresee as being connected to his

criminal activity, but fails to explain why the drugs for which he was held responsible were not reasonably foreseeable.  *See id*. at 22-23.

Equally important, the PSR clearly explains why Foster was held responsible for certain drugs in this case.  *See* PSR at ¶¶ 29, 29a.  In the Section 2255 Motion, Foster offers no response to the statements in the PSR.  *See generally* Dkt. No. 274 at 23-25.  Instead, in the Section 2255 Motion and his reply, Foster challenges the credibility of various witnesses as "drug addicts."  Foster's habeas proceeding is simply far too late for him to challenge the credibility of witnesses at his trial.  *See United States v. Hodges*, 770 F.2d 1475, 1478 (9th Cir. 1985) ("questions of credibility are for the jury to decide and are generally immune from appellate review.").  Moreover, having presided over Foster's trial, this Court will not revisit adopting the PSR's findings with respect to the drug quantity for which Foster is responsible.  In his reply, Foster also appears to challenge holding him responsible for drugs he provided to Sheldon Koyanagi.  *See* Dkt. No. 284 at 12.  However, although Foster asserts that Koyanagi "was allowed to create a language of texts between multiple telephone numbers," *see id*., he does not challenge the finding in the PSR that his provision of these drugs to Koyanagi was supported by texts *he*

sent to Koyanagi. Foster also never claims that he did not provide Koyanagi with these drugs.[18]

As a result, the Court finds that Foster has failed to explain how his counsel acted ineffectively with respect to the quantity of drugs for which he was held responsible, and, in any event, he was properly held responsible for the drugs attributed to him in the PSR. Therefore, Foster's sixth claim is meritless.

### 7. Claim Seven

In his seventh claim, Foster asserts that he is not guilty of the conspiracy charged in Count Four in light of a letter he says he has received from Penitani. Foster also asserts that he received ineffective assistance of trial counsel when counsel failed to make a proper motion for judgment of acquittal with respect to Count Four. Because these two arguments concern different legal standards, the

---

[18]In the Section 2255 Motion and his reply, Foster raises other arguments under the heading of his sixth claim. None of those arguments is adequately explained. In the Section 2255 Motion, Foster asserts, without explanation, that the Court failed to comply with "Rule 32(c)(3)(D)…." Dkt. No. 274 at 24. There is, however, no Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure. Given that there is no other explanation concerning this argument, it is impossible for the Court to discern what rule Foster may be trying to invoke. Next, in his reply, and without explanation, Foster appears to argue that Section 404 of the First Step Act applies to his case, "[t]here is separation of powers concerns[,]" and Section 1B1.2(a) of the Sentencing Guidelines is "defunct[.]" Dkt. No. 284 at 12. Because these assertions are not adequately explained, the Court does not further address them, other than to note that Section 404 of the First Step Act concerns the applicability of the Fair Sentencing Act and the Fair Sentencing Act applied to Foster's sentence. *See* PSR at ¶ 27 (applying the 2014 Sentencing Guidelines Manual); U.S.S.G. App. C, amend. 750 (making permanent, effective as of November 1, 2011 the changes made by the Fair Sentencing Act).

Court addresses them separately, turning to counsel's alleged ineffective assistance first.

Foster asserts that trial counsel rendered ineffective assistance in failing to make a "qualified" motion for judgment of acquittal of Count Four. Foster asserts that counsel should have stated the elements of a conspiracy and argued the government's evidence fell short of establishing each element. The only specific evidentiary shortfall to which Foster points, however, is that Becky Chanthaboury testified that she purchased drugs from Foster's co-defendant, John Garcia, rather than Foster.

As an initial matter, Foster's trial counsel *did* move for judgment of acquittal with respect to all counts against Foster, which, necessarily, includes Count Four. *See* 2/19/15 Transcript at 94:12-95:2, 95:23-96:3. Nonetheless, liberally construing Foster's assertion that counsel allegedly did not file a "qualified" motion for judgment of acquittal, the Court assumes that Foster is challenging counsel's failure to raise a specific reason for why Foster should have been acquitted of Count Four. There is good reason, however, why counsel did not raise a specific reason for acquitting Foster of Count Four: as the Court explained at trial, there was more than enough evidence to send Count Four to the jury. *See id*. at 98:21-99:13.[19] Foster's reliance on the testimony of Chanthaboury does not

---

[19]Specifically, the Court found as follows:

change this calculus, given that, even if Chanthaboury only purchased drugs from Garcia, this does not alter whether Foster should have been acquitted of Count Four.

As a result, the Court finds that trial counsel did not provide ineffective assistance of counsel with respect to moving for judgment of acquittal on Count Four.

Foster also argues that he is not guilty of Count Four in light of a letter he says he has received from Penitani. The letter is attached to the Section 2255 Motion. Dkt. No. 274-5. Although Penitani's name is written at the bottom of the letter, the letter is neither authenticated nor dated. The letter is directed to "William M. Domingo," who was the attorney for Foster's co-defendant, Garcia, at trial. The letter states that AUSA Chris Thomas, the criminal prosecutor, told Penitani to lie while testifying at the trial and coached him on how to answer questions. The letter further states that Penitani spoke with two other government

---

With regard to the drug counts, I'm not sure I even need to go into the sufficiency of the evidence as it relates to Counts 1, 2 and 4. It doesn't appear to me that the defense is seriously contesting those three counts from going to the jury. There is significant and ample evidence through any number of witnesses, starting with the HPD search team that went through the unit on Waiola Street, and the – obviously, the evidence that they found, combined with the cooperating witnesses's testimony of numerous drug transactions, both cocaine and methamphetamine, with these particular defendants, both of them occurring with Ms. Nguyen, with Mr. Penitani, and with Mr. Koyanagi. There really doesn't need to be anything more than that; and there is ample evidence, maybe even redundant evidence, from these particular witnesses, combined with the search team results, to send those three Counts 1, 2, and 4 to the jury.

witnesses and those witnesses lied.  The letter asserts that Foster and Garcia got an "un-fair trial."  The letter concludes by stating that: "Mr. Garcia is really not supposed to be guilty.  He's not a business man at all.  Thank you."  *Id.*

As a preliminary matter, it is far from clear whether the letter is meant for Foster's benefit.  Although the letter appears to state that the trial of Foster and Garcia was "un-fair," the letter is addressed to Garcia's counsel and states that only Garcia is "not supposed to be guilty."  Put simply, even if accepted on its face, the letter does not exonerate *Foster*.[20]  This is especially true given that the letter lacks any specificity as to the purported lies that Penitani or the other unnamed witnesses committed.  That issue aside, the letter cannot be accepted on its face because it is not authenticated and, more generally, lacks any indicia of reliability.[21]  Moreover, in his reply, Foster fails to address the authenticity issues raised by the government.  *See* Dkt. No. 283 at 38; Dkt. No. 284 at 13.

As a result, whether viewed in the guise of an independent constitutional challenge to Foster's convictions or a challenge to the adequacy of the evidence at

---

[20]The Court notes that, although the letter itself is confined to one page of paper, a second page is included in the exhibit.  *See* Dkt. No. 274-5.  The second page states, "For Charles Foster[.]" The foregoing statement is in a different ink color than the letter and appears to be in a different handwriting as well.  In any event, even if the Court was willing to accept that the letter was "[f]or" Foster, nothing in the letter exonerates Foster.

[21]As described, the letter is undated and possesses minimal specificity.  It is also a stretch to say that the letter has been *signed* by Penitani.  Put simply, the letter could have been written by anyone at any time.

trial, Foster's seventh claim, to the extent it is premised upon the letter (Dkt. No. 274-5) as newly discovered evidence, is meritless.[22]

### 8. Claim Eight

In his eighth claim, Foster asserts that he received ineffective assistance of trial counsel when counsel failed to challenge the admission into evidence of certain drugs. Foster asserts that, after finding drugs in an apartment, police officers violated protocol in tracking and logging the drugs, and thus, created an imperfect chain of custody with respect thereto. Foster asserts that his trial counsel was aware of the breaches in the custody chain, but failed to file a motion to suppress the drugs seized from the apartment. Under the same claim-heading, Foster also asserts that newly discovered evidence reflects that the former Honolulu Chief of Police, a former prosecutor for the City of Honolulu, and unnamed police officers of the Honolulu Police Department (HPD) are corrupt and have a history of fabricating evidence. Because these arguments concern different legal standards, the Court addresses them separately, turning first to counsel's alleged ineffective assistance.

---

[22]In *United States v. Berry*, 624 F.3d 1031, 1038-39 (9th Cir. 2010), the Ninth Circuit explained that a claim of "newly discovered evidence" could be treated as one brought under Section 2255–to the extent the claim is based upon an independent constitutional violation–or one brought under Rule 33 of the Federal Rules of Criminal Procedure for a new trial. Under either framework, and even if Foster's seventh claim could be deemed timely brought under Rule 33, *see id.*, Foster would not prevail because the unauthenticated letter does not provide evidence of an independent constitutional violation or warrant a new trial.

As an initial matter, other than a bald assertion that trial counsel was "aware" of the alleged issues with the chain of custody for the drugs seized from the apartment, Foster provides no support for this statement. This is especially notable in light of trial counsel's declaration that he was unaware of any wrongdoing by the police officers who were part of the chain of custody, Dkt. No. 283-7 at ¶ 12, and Foster's failure to mention counsel's alleged awareness in his reply, *see* Dkt. No. 284 at 14-15. Further, Foster provides no support, other than his own assertions, for his argument that the chain of custody was improper for the drugs seized from the apartment. In addition, a stipulation concerning the chain of custody for these drugs was made at trial.[23] In neither the Section 2255 Motion nor his reply, does Foster challenge this stipulation.

---

[23]In pertinent part, the stipulation provided as follows:

> That if called to testify, Ejo Urakami, Adam McLlrath, and Keo Mika are employed by Honolulu Police Department as Evidence Custodians. In their respective capacity as Evidence Custodians, each of them individually were involved in handling the evidence submitted under HPD Police Report Numbers 13-056407 and 13-056640, hereinafter referred to as, quote, 'the evidence,' unquote.

> Their duties required them to sign out the evidence and to deliver it to Amanda Pontius, the Criminalist with HPD, and to retrieve the evidence back into custody at the conclusion of her tests. At all times while handling the evidence under HPD Police Report Number 13-056407 and 13-056640, each of them ensured the integrity of the evidence and can attest that it was not altered, modified, or affected in any way while in their possession. The evidence was at all times in the same or substantially the same condition as when it was initially received into evidence.

> …

2/17/15 Transcript of Jury Trial at 116:20-117:11, Dkt. No. 228.

As a result, because Foster provides no support for the assertion that his trial counsel was aware of any issue with the chain of custody for the drugs seized from the apartment, and Foster's trial counsel refutes any such assertion, the Court finds that Foster was not provided with ineffective assistance in this regard.[24]

Foster also asserts that newly discovered evidence reflects that various officials or police officers are corrupt and have a history of fabricating evidence. For present purposes, the Court will assume that the basis for this argument is newly discovered, and thus, is not necessarily time-barred for the reasons discussed earlier with respect to equitable tolling. That being said, as presented, the argument is entirely meritless. While Foster believes that various public officials and/or police officers may be corrupt and have fabricated evidence in the past, he points to no specific impropriety related to *this* case. In other words, Foster seeks to be found not guilty by association, even though there is no association with this case. As such, Foster points to no independent constitutional violation or even material evidence that would warrant either Section 2255 relief or a new trial. *See Berry*, 624 F.3d at 1038, 1042. Therefore, to the extent Foster's eighth claim is premised upon new evidence, it is meritless.

---

[24]The Court notes that Foster does not argue that counsel failed to or inadequately investigated the chain of custody issues he alleges occurred.

## III. Evidentiary Hearing

For at least some of his claims, Foster appears to request an evidentiary hearing.  Pursuant to Section 2255(b), a court shall grant a prompt hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief…."  28 U.S.C. § 2255(b).

As the Court has detailed herein, the record conclusively shows that Foster is not entitled to the relief he seeks in the Section 2255 Motion.  First, some or all of the claims in the Section 2255 Motion are time-barred.  Second, to the extent assertions alone may, under other circumstances, warrant further factual development, *Foster's* assertions in the Section 2255 Motion and his reply do not because they are nothing but bald assertions and generalized, conclusory statements that are controverted by all of the actual evidence in the record.  The Court, thus, finds that an evidentiary hearing is not warranted in this proceeding.

## IV. Certificate of Appealability

In denying the Section 2255 Motion, the Court must also address whether Foster is entitled to a Certificate of Appealability ("COA").  *See* R. 11(a), Rules Governing Section 2255 Proceedings.  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This standard is met only when the applicant shows that "reasonable jurists could debate whether . . . the petition should have been resolved in a

different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel,* 529 U.S. 473, 483–84 (2000) (internal quotation marks omitted).  In light of all of the findings herein, the Court concludes that reasonable jurists would not debate the resolution of the Section 2255 Motion.  Accordingly, the Court DENIES the issuance of a COA.

## CONCLUSION

For the foregoing reasons, the Court DENIES the Section 2255 Motion, Dkt. No. 274.  In addition, the Court DENIES a COA.

The Clerk is directed to enter Judgment in favor of Respondent, the United States of America, and then close Case No. 18-cv-420 DKW-RT.

IT IS SO ORDERED.

Dated:  June 10, 2019 at Honolulu, Hawai'i.

_____
Derrick K. Watson
United States District Judge

---

*Foster v. United States*; CR. NO. 13-00219 DKW, CV. NO. 18-00420 DKW-RT; **ORDER (1) DENYING MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE; AND (2) DENYING CERTIFICATE OF APPEALABILITY**